FILED
2009 OCT -1 PM 1:51
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Eric Babos, | : | Case No. 3:09CV0908 |
| Petitioner | : | Judge Jack Zouhary |
| v. | : | Magistrate Judge David S. Perelman |
| Robert Welch, Warden, | : | REPORT AND RECOMMENDATION |
| Respondent | : | |

In this action in habeas corpus, 28 U.S.C. §2254, petitioner challenges the constitutionality of his August 5, 2005 conviction in a jury trial of one count of murder, with a firearm specification upon which he is serving a sentence of 15 years to life imprisonment, with an additional three years for the specification, to be served consecutively.

Petitioner's conviction arose from the December 15, 2004 shooting of Mr. John Riebe.

During his trial, the petitioner filed a motion to suppress all evidence obtained from a warrantless search and seizure, particularly a flannel shirt he wore at the time of his arrest. That motion was denied on August 1, 2005, and his trial proceeded.

Petitioner moved for a mistrial on August 3, 2005, but that motion was also denied.

On August 18, 2005, prior to his sentencing, the petitioner filed a motion for new trial pursuant to Rule 33(A)(2) of the Ohio Rules of Criminal Procedure, arguing that a prosecution

1

witness, Detective Sergeant Robert Cowell, had engaged in misconduct, and that he and/or other prosecution representatives had withheld exculpatory evidence. That motion was denied on November 18, 2005.

Represented by new counsel, on December 13, 2005 petitioner filed a timely notice of appeal to the Ohio Sixth District Court of Appeals, challenging the trial court's denial of his motion for a new trial, but on December 21, 2005 he was ordered to file a proper praecipe form and to attach a copy of the sentencing entry. Petitioner complied on December 29, 2005 by filing a replacement notice of appeal, but the court mistakenly docketed the notice as a new case under Case No. L-05-1424. On January 17, 2006, the court dismissed sua sponte the former case, Case No. L-05-1394, for failure to comply with the December 21st order. Arguing that he had complied, on January 20, 2006 petitioner filed a motion for reconsideration, which the court granted on January 27, 2006, reinstating the case. The two appeals were consolidated on March 30, 2006.

On March 31, 2006, during the pendency of his direct appeal, the petitioner filed a second motion for a new trial, with appended affidavits, arguing that the police/prosecution had improperly withheld exculpatory evidence relating to the involvement of a drug dealer in the shooting of the victim. After oral arguments were heard, the court denied the motion on May 15, 2006.

Petitioner failed to file a timely appeal of the May 15, 2006 denial of his motion for a new trial. Instead, on July 3, 2006, he filed a notice of appeal and motion for delayed appeal with the Ohio Sixth District Court of Appeals, which was subsequently consolidated with his prior appeal, alleging as his sole assignment of error a challenge to the trial court's denial of his motions for new trial.

On May 18, 2007 the appellate court affirmed the judgment of the trial court. In that

opinion the court summarized the facts of petitioner's case as follows:

> On December 29, 2004, appellant was indicted for the murder of John Riebe. A jury trial commenced on August 1, 2005. Fourteen year-old Jamie Riebe testified that on December 15, 2004, at approximately 3:15 p.m. she and her younger sister, Nicole, arrived home from school and found their father, John Riebe, dead on the living room floor. He had been shot. While police were investigating the crime scene, appellant, Riebe's friend and assistant, called the house. Jamie testified that she spoke to appellant who insisted on talking to her dad who owed him money. Jamie testified that appellant sounded angry. She told appellant that there was something wrong with her dad and that he could not come to the phone. When the police asked Jamie who might have shot her father she named appellant and J.R., a man she described as her father's drug dealer.
>
> Daniel Boyle testified that he is the manager of the A-1 Heating Company where John Riebe sometimes worked on contract. In December of 2004, Riebe performed some installations for the company. Riebe employed appellant as his assistant. On December 15, 2004, at approximately 3:00 p.m., Riebe called Boyle at his office to inquire about payment due to him for a finished project. Boyle told Riebe his check was ready. Boyle testified that a couple of minutes later, appellant called and stated "I want my fucking money." Boyle explained to appellant that it was Riebe's responsibility to pay him and that only Riebe could pick up the check. Phone records introduced into evidence showed that both calls were made from the home phone of John Riebe.
>
> Robert J. Pfeifer testified that he owns the A-1 Heating company. On December 15, 2004, the company owed Riebe $800 for work performed. Pfeifer testified that he was in the office when the phone rang again minutes after appellant's call to Boyle. Pfeifer picked up the receiver and put the phone on hold without speaking to the caller. Subsequently, Pfeifer answered a call on another line. The caller identified himself as "Eric" and demanded money he claimed he was owed. Pfeifer told the caller that A-1 did not owe him any money; rather, Riebe owed him money. Pfeifer asked the caller to have Riebe call A-1. At approximately 4:00 p.m., "Eric" called again wanting to pick up Riebe's check. He told Pfeifer that Riebe could not pick it up because he was in the hospital. Pfeifer testified that he did not believe "Eric" was telling the truth and that

3

he refused to release Riebe's check to anyone other than Riebe.

Lisa Richman, Riebe's estranged wife, testified that on December 15, 2004 she received two phone messages from Riebe. At 2:58 p.m., Riebe left her a message asking her to pick up his check from A-1 heating. One minute later he left another message asking her to hurry and call him back. He stated "[I] got someone here waiting for his money." Richman testified that Riebe sounded panicked.

Daniel Davidson, a forensic scientist with the Ohio Bureau of Criminal Identification and Investigation, testified that he conducted tests for gunshot residue on a shirt owned by appellant. Appellant was seen wearing the shirt on December 15 and into the early morning hours of December 16. Davidson tested an area around the cuffs and sleeves. He found gunshot residue on the left sleeve.

Detective Robert Colwell with the Sylvania Township Police Department testified that he was called to the Riebe residence on December 15, 2004. While investigating, he answered Riebe's phone. The caller identified himself as Jason Rahman, said he knew Riebe and said his uncle, appellant, had information about someone that had threatened Riebe with a handgun. Rahman asked Colwell if he wanted to talk to appellant. In the early morning hours of December 16, appellant voluntarily came to the Sylvania Township Police Station. He stated that Riebe had a party at his house around December 10, 2004. Riebe, appellant and four other people were present when, as appellant described, a large black man entered the house brandishing a handgun. Appellant identified the man as "J.R." Colwell testified that later that morning, as he pressed appellant for more details, appellant recanted the story. In addition, the other individuals present at the party denied ever seeing a gun. Appellant told Colwell that between 3:00 p.m. and 3:30 p.m. on December 15, he was at his brother's house working on some remodeling projects.

On August 5, 2005, the jury found the appellant guilty of murder in violation of R.C. 2903.02(B). Appellant filed a motion for a new trial which was denied on November 18, 2005. He was sentenced 18 years to life.

On July 2, 2007 petitioner appealed the appellate court ruling to the Ohio Supreme Court, alleging the following sole proposition of law:

4

> **Proposition of Law No. I:** A trial court errs when it overrules a motion for a new trial based upon the State's failure to disclose evidence favorable to the Defendant, in violation of the Defendant's right to due process. Fourteenth Amendment, United States Constitution, and Section 16, Article I of the Ohio Constitution.

On October 24, 2007 the supreme court denied petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question. His motion for reconsideration was also denied.

On February 20, 2007, while his direct appeal was still pending, the petitioner (acting pro se) filed with the trial court a motion for relief from judgment in which he asserted the following claims for relief:

1. Petitioner's constitutional rights were violated when he was convicted and sentenced on the charge of murder when the State failed to prove beyond a reasonable doubt each element of the offense as charged in the indictment.

2. Petitioner's constitutional rights were violated when he was convicted and sentenced on the charge of murder against the great weight of the evidence.

3. Petitioner's constitutional rights were violated when detectives seized a shirt from him without a warrant.

4. In light of all the evidence, it is more likely than not that a reasonable juror would not have convicted Petitioner; Petitioner is actually innocent of the charged offense.

5. The State relied on speculative evidence at trial to convict Petitioner wrongfully.

6. Assistance of trial counsel was ineffective.

7. The trial court abused its discretion by allowing the use of evidence without proof of chain of evidence.

On February 26, 2007 the petitioner filed a motion to supplement or amend his motion for relief

5

from judgment so as to include the following four additional claims for relief:

> 8. Defendant was denied a fair trial when State's witness Sgt. Colwell testified to the Appellant's arrest on other charges.
>
> 9. The State withheld from discovery as statement made by Clarence Evans.
>
> 10. The State failed to disclose evidence that Thomas Jackson may have murdered John Riebe.
>
> 11. The State failed to disclose discovery information implicating Valynn Rodgers in the murder of John Riebe.

The State opposed the motion, arguing that the foregoing claims were duplicative of those raised in the case pending before the appellate court.

On May 10, 2007 the petitioner requested leave to supplement his motion for relief from judgment with another claim for relief:

> 12. Assistance of appellate counsel was ineffective.

Petitioner's motion for relief from judgment was denied by the trial court on June 4, 2007.

Petitioner appealed that denial to the Ohio Sixth District alleging the following thirteen assignments of error:

> I. Trial court erred when it denied Appellant's motion for relief from judgment, filed pursuant to O.R.C. 2953.21 and in not issuing findings of fact and conclusions of law violating Appellant's constitutional rights.
>
> II. The State failed to produce any sufficient evidence to prove every element of the charged offense beyond reasonable doubt.
>
> III. The Defendant's [sic] conviction on the charge of murder was against the great weight of the evidence, resulting in a manifest miscarriage of justice.
>
> IV. The Defendant's [sic] Fourth Amendment rights were violated when the government seized a shirt without a warrant.

6

V. The facts and evidence at trial show it is more likely than not that Defendant [sic] is innocent of the charged murder and that he is factually innocent.

VI.. Appellant's rights were violated when the State used gunshot residue evidence without proving chain of custody for the shirt, on which residue was discovered.

VII. Assistance of trial counsel was ineffective.

VIII. The trial court abused its discretion when it allowed gunshot residue to be entered as evidence.

IX. The Defendant [sic] was denied due process when the Prosecutor used "other acts" evidence at trial.

X. The rights of Appellant were violated when the State withheld a videotaped statement.

XI. Appellant's rights were violated when the State withheld statements implicating Thomas Jackson for the murder of John Riebe.

XII. Appellant's rights were violated when the State withheld the statement that Valynn Rodgers admitted to Vincent Williams that he was the killer.

XIII. Assistance of appellate counsel was ineffective.

On February 15, 2008 the appellate court affirmed the judgment of the trial court.

On March 17, 2008 petitioner appealed the appellate court ruling to the Ohio Supreme Court, alleging the following five propositions of law:

**Proposition of Law No. I:** Was it error when the court failed to remand for findings of fact and conclusions of law?

**Proposition of Law No. II:** Was it error when the court stated claims had previously been before the court?

**Proposition of Law No. III:** Was it error for the court to state the claims were barred by the doctrine of res judicata?

7

**Proposition of Law No. IV:** Was it error for the court to substitute its ruling for that of the silent court?

**Proposition of Law No. V:** Was it error when the court ruled on Appellant's motion for relief from judgment appeal without addressing the 4th Amendment issue?

On June 18, 2008 the state supreme court denied petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

While the appeal of the denial of his motion for relief from judgment was pending the petitioner filed with the Ohio Sixth District a pro se motion to reopen his appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure, arguing that he had been denied the effective assistance of appellate counsel by reason of counsel's failure to raise the following assignments of error on appeal:

1. The State failed to produce any sufficient evidence to prove every element of the charged offense beyond reasonable doubt.

2. The Defendant's conviction on the charge of murder was against the great weight of the evidence, resulting in a manifest miscarriage of justice.

3. The Defendant's Fourth Amendment rights were violated when the government seized a shirt without a warrant.

4. The facts and evidence at trial show it is more likely than not that Defendant is innocent of the charged murder and that he is factually innocent.

5. Appellant's rights were violated when the State used gunshot residue evidence without proving chain of custody for th shirt, on which residue was discovered.

6. Assistance of trial counsel was ineffective.

7. The trial court abused its discretion when it allowed gunshot residue to be entered as evidence.

8

8. The Defendant was denied due process when the Prosecutor used "other acts" evidence at trial.

9. The rights of Appellant were violated when the State withheld a videotaped statement.

10. Appellant's rights were violated when the State withheld statements implicating Thomas Jackson for the murder of John Riebe.

11. Appellant's rights were violated when the State withheld the statement that Valynn Rodgers admitted he was the killer.

On August 30, 2007 the appellate court denied the petition. Petitioner's subsequent application for en banc review or reconsideration was also denied. Petitioner did not appeal the denial of his application to reopen to the Ohio Supreme Court.

On February 14, 2008, the petitioner filed with the United States Supreme Court a petition for writ of certiorari challenging the October 24, 2007 decision of the state supreme court denying petitioner leave to appeal and dismissing the appeal as not involving any substantial constitutional question. His petition was denied on April 21, 2008.

Petitioner filed the instant petition on April 20, 2009 in which he raises the following four claims for relief:

A. **GROUND ONE:** *Brady* Violation– the prosecution failed to provide favorable evidence to the defense prior to or even during his trial for murder.

B. **GROUND TWO:** *Napue*– the prosecution's deliberate failure to provide exculpatory evidence.

C. **GROUND THREE:** Actual Innocence.

D. **GROUND FOUR:** Ineffective Assistance of Trial Counsel.

The provisions of the Antiterrorism and Effective Death Penalty Act, "AEDPA," Pub. L.

9

No. 104-132, 110 Stat. 1214 (Apr. 26, 1996) are controlling herein as the instant petition was filed after the Act's effective date. Lindh v. Murphy, 521 U.S. 320 (1997).[1]

The role of a federal district court in habeas corpus is set forth in Title 28 U.S.C. § 2254 (d) which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has held that the clauses "contrary to" and "unreasonable application of" as found in §2254(d)(1) have independent meanings; Williams v. Taylor, 529 U.S. 420 (2000), with the state court adjudication being "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court];" and with the state court adjudication involving an "unreasonable application of clearly established Federal law, as determined by the Supreme Court" "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state

---

[1] There are no issues of untimeliness in this case.

prisoner's case," or "if the state court either unreasonably extends a legal principal from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principal to a new context where it should not apply or unreasonably refuses to extend that principal to a new context where it should apply." 120 S.Ct. at 1519-1520. In deciphering the "unreasonable application" clause this Court must inquire as to whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521. Even if the state court decision resulted in an incorrect application of federal law, if that decision is reasonable it will stand. Id. See, Machacek v. Hofbauer, 213 F.3d 947, 953 (6th Cir. 2000).

Petitioner's first two claims for relief will be considered together, as they each allege improper conduct of the prosecution by reason of the suppression of evidence, which calls into question the rule of law of Brady v. Maryland, 373 U.S. 83, 87 (1963), which obligates the government "to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." Coe v. Bell, 161 F.3d 320, 343 (6th Cir. 1998). Suppression of such evidence by the prosecution upon request violates due process irrespective of the good faith or bad faith of the prosecution. Brady, 373 U.S. at 87. This duty exists on the part of the prosecution whether or not the evidence is requested by the defense. Strickler v. Greene, 527 U.S. 263 (1999).

"Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985). The materiality requirement was clarified in Kyles v. Whitley, 514 U.S. 419, 434 (1995), wherein the court held in pertinent part:

11

> *Bagley's* touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."

Thus, in a successful Brady claim, "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, supra at 281-282. It follows, that the Brady rule does not apply where the evidence is available to the defense from sources other than the state and the defense is aware of the facts necessary to lead to that evidence. Spirko v. Mitchell, 368 F.3d 603 (6th Cir. 2004).

In a habeas corpus context, application of the foregoing is altered by the requirement that this Court defer to the findings of the state courts on petitioner's claims of prosecutorial misconduct. Bowling v. Parker, 344 F.3d 487, 512 (6th Cir. 2003), citing Macias v. Makowski, 291 F.3d 447, 453-54 (6th Cir. 2002) ("If this court were hearing the case on direct appeal, we might have concluded that the prosecutor's comments violated Macias's due process rights. But this case is before us on a petition for a writ of habeas corpus. So the relevant question is not whether the state court's decision was wrong, but whether it was an unreasonable application of clearly established federal law.") Habeas relief may only be granted on this claim if the state court's decision that the conduct of the prosecuting attorney was not unconstitutional constituted an unreasonable application of clearly established federal law.

The state appellate court applied the rule of Brady, without citing the case, when it held:

Appellant next contends that he was denied his right to a fair trial when the prosecution failed to disclose a videotaped interview with one of Riebe's drug suppliers. Colwell testified that in a video taped interview, Clarence Evans told police that Riebe owed him money. He denied being at Riebe's house on December 15, 2004. Appellant's counsel moved for a mistrial on the basis that he was never provided a copy of the video tape which was potentially, exculpatory evidence.

The state's failure to preserve materially exculpatory evidence violates a defendant's due process rights under the *Fourteenth Amendment to the United States Constitution*. See *Arizona v. Youngblood (1988), 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281; California v. Trombetta (1984), 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413*. The burden rests with the defendant to prove that the evidence in question was materially exculpatory. See *State v. Jackson (1991), 57 Ohio St.3d 29, 33, 565 N.E.2d 549*. Such evidence is deemed materially exculpatory if "there is a 'reasonable probability' that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *State v. Johnston (1988), 39 Oho ST.3d 48, 61, 529 N.E.2d 898*, citing *United States v. Bagley (1985), 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481*. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Jackson, 57 Ohio St.3d at 33*.

In contrast, evidence is not materially exculpatory if it is merely potentially useful. See *State v. Lewis (1990), 70 Ohio App.3d 624, 591 N.E.2d 854, 8 Anderson's Ohio App. Cas. 185*. Potentially useful evidence indicates that the evidence may or may not have incriminated the defendant. See *id. at 634*. The failure to preserve evidence that by its nature or subject is merely potentially useful violates a defendant's due process rights only if the police or prosecution acted in bad faith. *Arizona v. Youngblood, 488 U.S. at 57-58, 109 S.Ct. 333, 102 L.Ed.2d 281; State v. Keith (1997), 79 Ohio St.3d 514, 1997 Ohio 367, 684 N.E.2d 47, State v. Combs, 5th Dist. No. 03CA-C-12-073, 2004 Ohio 6574, P16*. The "term 'bad faith' generally implies something more than bad judgment or negligence. 'It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.'" *State v. Wolf, 154 Ohio App.3d 293, 2003 Ohio 4885, P14, 797 N.E.2d 109*, quoting *Hoskins v. Aetna Life Ins. Co. (1983), 6 Ohio St.3d 272*,

13

*276, 6 Ohio B. 337, 452 N.E.2d 1315.*

In the present case, a hearing on appellant's motion for a mistrial was held in chambers. The prosecutor testified that he had never seen the video tape and that was why appellant's counsel had never seen the video tape. Detective Colwell testified that he thought he had given all of the evidence to the prosecutor but he could not say for sure whether or not the prosecutor had gotten a copy of Evan's interview. Detective Slaman of the Sylvania Township Police Department testified that his department did not give the Lucas County Prosecutor's office a video taped copy of every interview they conducted in relation to the Riebe murder investigation. He could not specifically confirm that the prosecutor received a copy of Evan's interview. Given this testimony, we find no reason for the trial judge to have doubted the prosecutor's word that he did not know about the video tape and no evidence of bad faith.

\* \* \* \* \*

Finally, appellant contends that the state failed to disclose information implicating Valynn Rodgers, also know as "J.R.", in the murder of Riebe. Detective Slaman testified at appellant's hearing on his motion for a new trial. In January 2005, another detective called him and suggested he talk to Vincent Williams about the murder of Riebe. Slaman interviewed Williams at the Lucas County Jail where Williams was incarcerated. Slaman testified that Williams knew none of the details of Riebe's murder and, more importantly, he never said that Valynn Rodgers killed Riebe. In Slaman's opinion, William's only motivation in implicating Rodgers was to secure a lesser jail sentence for himself. Slaman testified that even though police knew Rodgers sold drugs to Riebe and that he had been to Riebe's home, he was excluded as a suspect early on in the investigation because his alibi was confirmed.

In sum, we do not find that the police or that the prosecution intentionally withheld evidence that would have changed the result of appellant's trial. Accordingly, the trial court did not abuse its discretion in denying appellant's motion for a new trial and appellant's assignment of error is found not well-taken.

This Court is of the opinion that the foregoing state appellate court ruling that the conduct of the prosecution was not improper and failed to rise to the level of a constitutional violation did

14

not constitute an unreasonable application of clearly established federal law. That is particularly true in this case where there was no indication that the petitioner had been prejudiced by the failure to disclose videotaped testimony which the prosecution had not seen, and where the investigators had rejected Rodgers as a suspect upon confirming his alibi. It follows that petitioner's first two claims for relief are without merit.

In his third claim for relief petitioner alleges that he is actually innocent of the crimes with which he was charged.

The Sixth Circuit Court of Appeals does not recognize a free-standing actual innocence claim for relief in federal habeas corpus in a non-capital case absent accompanying allegations of constitutional error at trial. Cress v. Palmer, 484 F.3d 844, 854 (6th Cir. 2007), citing Schlup v. Delo, 513 U.S. 298, 315 (1995) and Herrera v. Collins, 506 U.S. 390, 404 (1993). "[A] claim of "actual innocence" is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Herrera v. Collins, supra at 404. In this case, as in Herrera, the petitioner:

> [d]oes not seek excusal of a procedural error so that he may bring an independent constitutional claim challenging his conviction or sentence, but rather argues that he is entitled to habeas relief because newly discovered evidence shows that his conviction is factually incorrect. The fundamental miscarriage of justice exception is available "only where the prisoner *supplements* his constitutional claim with a colorable showing of factual innocence." *Kuhlmann, supra*, at 454 (emphasis added). We have never held that it extends to freestanding claims of actual innocence. Therefore, the exception is inapplicable here.

Id. at 404-405. As this free-standing actual innocence claim does not accompany such a claim, it is not cognizable in habeas corpus and should be dismissed on that basis.

In his fourth claim for relief petitioner alleges that he was denied the effective assistance of trial counsel in two particulars: (1) "counsel failed to obtain a clear tape of the telephone call of John Riebe to his estranged wife just before his death," and (2) "counsel failed to call all necessary witnesses to properly present the defense of Eric Babos."

The respondent contends, and this Court agrees, that the petitioner has not presented the foregoing claims of ineffective assistance of trial counsel to any state court, instead having argued upon motion for relief from judgment that his counsel had been constitutionally ineffective by reason of failure to call certain witnesses to testify at the hearing upon his motion for a new trial (as opposed to at his trial). The petitioner admits his failure to present this claim to the state courts, by stating in his petition:

> This issue is not fully developed. Additional discovery is necessary to further develop this issue. Discovery requests and an evidentiary hearing request will be made in separate filings.

The exhaustion doctrine requires that before filing a petition in federal habeas corpus a defendant must utilize all available state remedies, through a motion or petition for review by the state's highest court, by which he/she may seek relief based upon an alleged violation of constitutional rights. Granberry v. Greer, 481 U.S. 129, 133 (1987). Under the exhaustion doctrine a petitioner must "fairly present" each federal constitutional claim to the state courts before seeking relief in federal court. Baldwin v. Reese, 541 U.S. 27 (2004); Hannah v. Conley, 49 F.3d 1193, 1196 (6th Cir. 1995). In so doing, state courts are afforded "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

Fair presentation of the factual and legal basis for a federal constitutional issue to the state's

16

courts may be made in four ways:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000), citing Franklin v. Rose, 811 F.3d 322, 326 (6th Cir. 1987), cert. denied, 532 U.S. 958 (2001). Accord, Whiting v. Burt, 395 F.3d 602, 613 (6th Cir. 2005); Blackmon v. Booker, 394 F.3d 399, 400 (6th Cir. 2004). It is not enough to present the facts giving rise to the federal claim raised in habeas corpus; a petitioner must present the same legal theory to the state courts as is presented to the federal courts in order to preserve the claim. Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998). Even if a claim is related, but distinct, the claim is nonetheless defaulted. Lott v. Coyle, 261 F.3d 594, 607, 619 (6th Cir. 2001).

In addition, merely "mak[ing] a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court[,]" does not sufficiently apprise the state court of a specific federal constitutional guarantee so as to exhaust the claim. Gray v. Netherland, 518 U.S. 152, 162-63 (1996), citing Picard v. Connor, 404 U.S. 270, 271 (1971) and Anderson v. Harless, 459 U.S. 4, 7 (1982). For example, use of the term "ineffective assistance" also fails to alert the state courts of the federal nature of a claim. Baldwin v. Reese, supra.

Where a petitioner has failed to fairly present the factual and legal basis for a federal constitutional issue and would be barred from pursuing relief on that claim in the state courts[2] the petition should not be dismissed for failure of exhaustion, in light of the fact that there would then

---

[2] Under a longstanding Ohio procedural rule, a claim which could have been but was not raised on direct appeal would be barred from being raised in a delayed appeal or in a petition for post-conviction relief. See, Collins v. Perini, 594 F.2d 592, 593 (6th Cir. 1978).

17

be no available state remedies. Hannah v. Conley, supra at 1195-96; Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994). However, the petitioner must then demonstrate cause for failure to fairly present the claims to the state courts and actual prejudice to his/her defense at trial or on appeal. Gray v. Netherland, supra at 162; Coleman v. Thompson, 501 U.S. 722, 750-51 (1991); Deitz v. Money, 391 F.3d 84, 808 (6th Cir. 2004).

Having failed to raise this claim to any state court, the claim is procedurally defaulted. Petitioner would be unable to pursue relief on that claim in the state courts in light of the fact that he could have raised it in an appeal, but did not, which causes it to be barred by the doctrine of res judicata. State v. Perry, 10 Ohio St.2d 175, 180, 226 N.E.2d 104, 105-106 (1967). Petitioner having offered nothing as to the cause of such procedural default, this claim for relief is subject to dismissal on that basis.

Petitioner's fourth claim for relief having been procedurally defaulted, and his first through third claims having failed on the merits, in light of all the foregoing it is concluded that no claim of constitutional violation has been presented requiring further proceedings prior to disposition on the merits and it is, therefore, recommended that the petition be dismissed without further proceedings.

/s/ David S. Perelman
DAVID S. PERELMAN
United States Magistrate Judge

DATE: October 1, 2009

AO 72A
(Rev. 8/82)

## OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

AO 72A
(Rev. 8/82)